Mr. Patterson's here for the appellants. We have Ms. Bitzer and Ms. Collins here for the appellees. Mr. Patterson, whenever you're ready. Thank you, your honors, and may it please the court. My name is Grant Patterson for the plaintiffs, and I think this case is important because it gives the court an opportunity to clarify what the pleading standard is when it comes to teacher-on-student sexual harassment cases, especially in the context of Title IX and section 1983. Why is this important? Because school officials have to be held accountable for sexual abuse of students, and if this decision is allowed to stand, that's going to effectively impose the heightened pleading requirement that has been expressly rejected by this Supreme Court and by this court in the Title IX and 1983 context. Instead of reading the complaint as a whole and considering the allegations together, the lower court instead weighed the believability of individual fact allegations. I mean, I just want to jump to something that seems like it'd be easy to plead. I mean, don't you have to plead that the university or administrator was on notice of the harassment? It seems like it'd be really easy to do that. You just say, like, we met at this day and told somebody about it, and is that not in here? I'm sorry, what was the last part of that question? Yeah, I mean, I looked through the complaint. I read the complaint many times. It looks like you do say that you put the university on notice in December of 2020, but then the university removed the coach in, like, a month later. Yes, Your Honor, thank you for your question. So, there's multiple instances where the plaintiffs allege that the university had noticed, that appropriate officials at the university had noticed, of Ms. Roddell's propensity for sexual harassment, which is what is required by Broward and Gebzer. And this is not just with December 2020. That goes back to the date she was hired. Yeah, and so that's, I guess that's the issue. The question is not whether the district court read the complaint in a light not favorable to you. To me, the question is whether the stuff that you said in the complaint actually put the university on notice of anything. I mean, can't we address that? Sure. Okay, so why is when they hired her, where in the complaint do you say that when they hired her, they knew that she had sexually harassed students in the past and was likely to do so in the future? Sure, so at the beginning of the fact sections in the complaint, I can't recall the specific page number off the top of my head, but it's right at the beginning of the fact section, we state that Coach Meeks-Roddell had a prior reputation of sexual harassment and physical, psychological, inappropriate behavior. That's one of the core basis of our belief that the university knew about this because, and then it's also paired with the fact that her sexually inappropriate behavior was open and obvious throughout the complaint. There's multiple instances where this is done in the presence of others, not just the teammates, not just the assistant coaches, but our assistant director Frisbee and more. Okay, where is that in the complaint? Frisbee and more. In the fact section, there's an allegation. I can get the specific reference. Yeah, I'll tell you what, it would really help because this is a long complaint. You make a lot of allegations that don't really have anything to do with sexual harassment. It would help if you could identify the specific parts of the complaint that you're saying make these allegations. So maybe that's something you can look at when you sit down. And I think just to piggyback, if you could tell us, again, this is not a quiz show, so not now, but when you stand back up, the allegations that are sufficiently precise so as not to be conclusory or impermissibly vague under Twombly and Eckball, that would be very helpful. Can I ask for some clarification? Are there any particular allegations that you have in your head that you think aren't sufficiently? For my purposes, it's anything that gets you deeper in time than December 2020. Because if all we're talking about is December 2020, then I think you've got a real deliberate indifference problem because, as Judge Brasher says, they were removed within a month. So I think you need to move the timeline back. Right. Now, Judge Brasher may have ideas about precisely what he wants. Can I add something to that equation? Please. With regard to the coach's reputation before being hired, that is in a single paragraph that provides no specific reputation. How was the reputation earned? How widely was that reputation? Why would the university have noted it? I mean, there's nothing. So if you can tell me how that parent put the university on notice of her proclivity for sexual harassment, that would help too. Mr. Patterson, did you get it? I think so. And thank you, Judge Jordan. So I think before I directly answer that question, I just want to preface by emphasizing exactly what the pleading requirement is. I think one of the mistakes and mistaken interpretations of Tuamal and Iqbal is that we have to plead plausible fact individually of themselves. We have to prove that the university knew. I understand that we can't just make conclusive allegations, and that's not what we're doing here. But the purpose of the analysis under Tuamal and Iqbal is that when you read the complaint as a whole, the question is, I believe, as this court put it, and they're quoting Tuamal, this court stated in American Dental, the plausibility requirement is simply that it calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the claim, not a particular fact allegation, but the claim. And I think when you read our complaint as a whole, where it's not just the December 2020 incident, it's not just the reputation that she had prior to getting hired at the University of South Alabama. It's the fact that there's those two things. And then there's also the open, obvious pattern of her behavior, where she's doing this. She's doing things like butt pinches and inappropriate I love yous and calling players babes, and she's texting multiple players like that. There's the floor hugs that we are stating that several of the plaintiffs were subjected to all of this stuff is out in the open. So the general question is, oh, and there's the incident in January of 2020, with plaintiff tipping where defendant Moore, and also to note, the court did find that defendants Moore, Frisbee and Erdman are appropriate persons. So anything to them can count for actual notice. But going back to the 2020 January 22 and 2020 incident, um, the fake fine incident, as we called it in our brief that, uh, you don't manufacture a fake fine unless you're trying to conceal something. So it's so here's on. I mean, I appreciate you mentioned the January 2020 because I, um, I think that that allegation is sufficient to put the university on notice of something, right? You know, you've identified something, and, um, that makes perfect sense. I guess what I'm trying to figure out is where, like, where's the connection to sexual harassment, right? I mean, it sounds like when I read your complaint, I read it. I read a complaint about an abusive coach who is mean to students who, you know, expects way too much of them is just abusive. But I'm looking for something that keys this to sex. And in the 20 the January 2020 with that, I don't really see anything that links into sex. So what's the link to sex? Thank you for your question. Um, so I think the link is that Caitlin tipping was subjected to a lot of the instances of sexual harassment. The same things that many other plans were right. She complains to or excuse me, the, uh, more chill code makes right to learn that she's going to leave the university and in response, come up with this fake fine and promise to make go away. If she lies, the inferences and especially when you combine it with all the other allegations in our complaint, the inferences that it's because of the sexual harassment, even even though the, um, the other stuff can be part of it. The sexual harassment is part of that as well. A huge part of it. And I would also just direct the court's attention to, um, some language from a case worthy of the city of phoenix city. Um, that even I'm saying this because even though it could be because of physical abuse or general, uh, abusive coaching tactics, it can also be because of the sexual abuse. And this court said in the worthy case, the motion to dismiss stage when there's two equally plausible ways to read a complaint, of course, should adopt the reading that's most favorable to the plaintiff. So when it's a 50 50 situation and it's not like the plausibility requirement is a probability requirement anyways, right? When it's 50 50 situation, that inference goes to the plaintiffs. So, as I said before, when you read these allegations in total, I think it creates at least at least a reasonable expectation that when we get to discovery, we're going to reveal evidence of the claim of each element of title nine. I guess. I guess. Oh, sorry. No, please. I guess on the on the point about like we need to get to discovery, you know, it's it's your clients. The plaintiff that is you're saying put them on notice in January of 2020. Um, you know, I guess this this was comparable to the last argument we had. I mean, wouldn't your plaintiff know what she put them on notice of and have anything to say about that? It just seems odd to say that we need to get to discovery to find out what our own plaintiff told the university. Yes, Your Honor. And I'll I'll say that's not necessary. That's not the argument I'm making either, right? Because that would be absurd. Um, I think that what I've heard worse, I'm sure you have. Uh, but yes. So the difference, I think, in what and what I'm trying to say is that it's it's there's more to the story than just ingrained. And I think we could have included some more particular details in our complaint. And if given the opportunity to, um, if this court finds that reversals warranted, we'd be happy to amend the complaint as well. We made that request to the district court, and we just got the decision without a without as much as a hearing on the matter. It just came down. Um, and so I think what my point is, is that although in fairness, we're already on the third amended, right? I'm sorry. We're already on the third amended. Yes. But on that note, I think we have not had a chance to submit a substantive. And if you look at the history of the amendments, we filed the first complaint in August 2021. I believe the second complaint was filed shortly after that, and it added six additional plaintiffs to the total that we're at now and then defendants more in Frisbee. And that amendment was as a right. In February 22, we filed a second amended complaint pursuant to a court order because that first amended complaint we had filed with two of the plaintiffs proceeding anonymously. The district court ordered us to, um, file another one with their names included. So and the court and the defendants and the appellate even acknowledged there was no substantive changes to that second one. And then the third operative complaint for which we were dismissed that was in response to court directives that we needed to clarify some of the things in our complaint. But substantively, nothing has changed. So to your point, I do. I recognize that third amendment that the third amendment complaint might sound bad. But when you look at what actually happened, it's not a concern. Okay, very well. Judge Jordan, do you have anything before we turn to hear from the other side? No, thank you. Okay, very well. You've reserved all your time for a bottle. We took you beyond your a lot of time. So you're thank you, Your Honor. So good. All right. Who's up first for the Apple ease? Miss Pitzer. Good morning. May it please the court. My name is Wendy. But, sir, I represent the University of South Alabama, three athletic administrators and two assistant volleyball coaches. Miss Celia Collins represents the head volleyball coach Alexis to make us right down our plan subject to your honors. Areas of inquiry is for to take my time, which taken eight minutes to speak on Title nine. And then, um, Miss Collins will take seven minutes to focus on section 1983. Although I would like to briefly speak to that with respect to my clients. Can I understand? Can I just make sure I understand correctly? It sounds like the parties are basically in agreement that the December 2020 allegation is sufficient to give actual notice to an appropriate person. That is what the district court found. And then, um, your position is if that's the only measuring stick, there's no deliberate indifference. That's correct. We did what we needed to do. So can you talk to us about the January 2020 allegation? Yes, with respect to, um, plaintiff tipping. So the allegation, well, let me back up just with respect to her. Um, there are no allegations in the complaint at all that she complained to anyone. And then the allegation with respect to the January 2020 meeting that they've alluded to that those air in paragraphs 91 through 93 of the third amendment. So do I have it right? It's that it's that Maddox complained about sexual abuse more than pressured tipping to write the letter. Is that the allegation from the complaint? You said Maddox Maddox, uh, complained about. So well, forgive me if I'm sorry, Sobolewski. Sobolewski and Maddox had a meeting. Sobolewski and Maddox had a meeting in December of 2020 with Joel Erdmann and Jenny Frisbee. And that is during that meeting, Sobolewski made the allegations of sexual harassment. That's where the district court found that she actually provided substance from which, you know, they could receive actual notice. So this backs up tipping is there eight plaintiffs. There are a lot of Hannah's. I guess what I'm trying to get at is in January 2020. You just said there's no allegation that tipping did anything. That's right. Tipping has not alleged that she's ever complained. Okay. And she's the one who's the subject of the January 2020 meeting where makes right down and more or alleged. So then just remind me, what does the complaint say about how it is that tipping came to be pressured to write this letter? The allegation is that upon learning that she was compelled to withdraw from the volleyball team and the university due to the defendant's wrongful conduct, they scheduled a meeting in January of 2020 2020 during which more and makes right down falsely declared she'd be in an effort to conceal conduct from the N. C. Double A. They would take care of it if she penned a letter stating she was leaving due to Australian fires rather than the physical, emotional and sexual abuse and harassment that she had suffered as a result of defendants wrongful conduct. And the district court correctly concluded that that is a conclusory statement and falls short of raising a reasonable inference that tipping or others placed more. And he's the administrator in that scenario regarding alleged sexual harassment. And there's no allegation that tipping or anyone else for that matter complained to more about sexual abuse or harassment. So just I'm sorry, I'm gonna ask one follow up. So just so I'm clear at the in the language you were just reading at the very beginning, you said they scheduled a meeting with more. Who's the day tipping and who? Um, I don't have the full complaint in front of me, but, um, I've got it in front of me. I'll read it to you. Okay. It's paragraphs 91 paragraph. Paragraph 91 says this. Um, upon learning that panel plaintiff tippling was compelled to withdraw from the volleyball team in the university due to defendants wrongful conduct. Defendants kill coat, chill coat, more and makes right L scheduled a meeting with plaintiff tipping in January 2020. During the January 2020 meeting, defendants more and makes right L sought to intimidate and manipulate plaintiff tipping by falsely declaring that she would be fined over $6,000 for leaving the university. 93 says in order to perpetuate the planet, the physical and emotional abuse and sexual harassment and concealed to such the such wrongful and illegal conduct from the N C double A and therefore also keep such conduct out of the public eye. Defendants more and makes right L convinced plaintiff tipping. Yada, yada, yada. Write the letter. So, you know, to just follow up on Judge Newsom's question. Why isn't that enough to say that defendant more was put on notice of this because he was involved in that meeting and he is alleged to have done these things to try to cover up what makes right else doing. So there are no allegations about what he knew what the scope of the alleged sexual harassment is, or even for that matter, what the scope of physical or emotional. The allegations aren't about specific to what he knew, but they say that he sought to intimidate and manipulate her and falsely declared that she would have to pay this fine and that he did all this to cover up the previous things that they've said happened to her. So why isn't that red in the favor of them enough to say that? I mean, obviously, you know, you can't, uh, manipulate and abuse someone and seek to cover up something if you have no knowledge about what's going on, right? So you have to read into it a little bit, but that's that's what they say. Well, I know that's what they say, but our position as the district courts was was that it was entirely conclusory, and there's no allegation anywhere in the complaint about anybody complaining to Chris Moore what the content of that was such that he had actual knowledge of sexual harassment or sexual abuse. I would like to go back to some of the other and if January 2020 is, uh, that is one of the items that they have listed that they suggest provides actual notice of it. And Mr Patterson talked about reputation, and I like this court in your questioning. Um, indicate it seems to me that, um, there is a general consensus that that is a generalized conclusory allegation. Um, and certainly I think it's important to to know that with respect to the reputation, they only plead that upon information and belief. Um, and so the court's not required to accept that it's true, and there's no alleged facts to substantiate what the reputation was, where it came from, or the facts and circumstances. The other complaints that they raise in the district court addressed were complaints from parents. Um, a couple complaints from parents one with respect to Hannah Johnson in February of 2019, but she had just suffered a concussion from getting hit in the head with a volleyball. And the allegation is that her mother called Jenny Frisbee and expressed concern about improper practices relating to help and safety. That is not sufficient. Your honors to put the university, uh, give them actual knowledge of sexual harassment. Can I ask you a broader, just a broader question? Do you? Do you concede that some of the allegations in this complaint are of sexual harassment? Because I just I've read a lot of these things and, um, this one just doesn't seem it seems harassing, but I don't. I'm having a hard time finding the sexual nature in it. Well, that's part of the problem with the complaint. And as your honors mentioned before, they're the masters of their complaint. And in fact, um, as Mr Patterson said before, um, you know, or maybe it was Judge Newsome who alluded to this, that this is information that would be knowledge that they have. And if they complained about sexual harassment, they had the ability to put that in the complaint. And with respect to this being the third amended complaint, it is the third amended complaint. But they did have notice an opportunity to fix this complaint. In fact, we moved to dismiss the first amended complaint and the magistrate judge issued an R. N. R. And said it was a shotgun pleading and also noted that it was filled with labels and conclusions and they needed to fix it. So they have had an opportunity to correct the pleading. And when they pleaded and submitted the third amendment complaint, it's now 150 pages, but it's replete with even more labels and conclusions. Can I ask you one more question before we turn to Judge Jordan? Uh, if we were to conclude that the the allegation concerning January 2020 incident was sufficient to put an appropriate person on actual notice, then how does your deliberate indifference argument change with respect to that timeline? If you're at December 2020, you know, it seems to me speaking for myself, you're in pretty good shape because you took care of things within a month. What if we reverse the calendar, the calendar almost a full year? Well, at this point in time, there are no allegations in the complaint, and that's all we can, you know, derive and speak to. We haven't had discovery about what happened in between. So we're just, you know, resting with what's alleged in the complaint. But I mean, is your position nonetheless that as a matter of law, even even if court you, you conclude that the notice was given in January 2020. Nonetheless, we were not deliberately different because, well, we haven't had an opportunity to say what the university did or did not do at this point in time. Okay, that's helpful. Judge Jordan, do you have anything from his bits, sir? I don't. Thank you. Could I speak for? Am I over you're over? Thank you so much. All right, Miss Collins, let's hear from you. Good morning. Please support. My name is Celia Collins. I'm attorney for defendant Alexis makes right down. The question with respect to my client is whether Judge Duvall's properly dismissed the claim against her for violating the substance substance substantive due process rights of the police. We submit that under the precedent of the United States Supreme Court and this court, her ruling is fully supported. The police allege a plethora of wrongful conduct by my client. And of course, parole is the head coach of their team at University of South Alabama. Um, these include very broad allegations of sexual abuse and physical abuse. The basic allegations they allege, however, enhanced make sound worse by various legal conclusions, unsupported, conclusory and inflammatory characterizations. The Supreme Court has told us the complaint must be analyzed under the standards that set forth in Bell Atlantic, Trombley and Ashcroft be it. The basic principles of these yes, Judge Jordan has a question. Okay, from my perspective, the allegations against your we're not conclusory in any way. They they may not have stated substantive process, but there's no doubt about what you're flying. Am I wrong about that? Well, I'll ask the question. He says that there's no there's no doubt about what your client is alleged to have done to these Children. It's it's and that's the question before this court. Well, I don't have a doubt about it. I mean, I think I'm playing. No, I'm not. The question is the subject. I think what he was saying. Does it allege a subject to the due process? Yes. And we agree there were civil tort civil claims alleged. We actually answered those in the initial complaint because there was enough alleged to withstand six. Substantive due process was another matter, which is why we proceeded with the motion to dismiss that. Um, and again, under under the Trombley and it Bob, I think you may be mixing buckets here. It seems to me Judge Jordan's question is, uh, there's there's there's enough specificity in this complaint with respect to what your client did. Now let's talk about whether that violates. Okay. Okay. Okay. Yeah. So I think in response to that question, I think you don't want to say Trombley and a fall. You just want to say let's talk about the law. Yeah. Um, okay. So let me get to that point. Okay. Um, so for substance to due process and in this case, they alleged that she violated their substantive due process with respect to their bodily integrity. Integrity. The conduct they described the complaint is basically in two categories. One is what I would call physical, the hard training sessions, the early morning practices, forcing them to play through injuries. The other category is the sexual need. It is, but pinches when they exited the bus and away games, telling them she loved them and asking them to say it floor hugs, etcetera. All this conduct in their allegations is alleged to have occurred entirely within the context of volleyball training games, coach player relationship under both Supreme Court law and 11th Circuit precedent. Sir, both both courts recognized that the court should be cautious and exercising in recognizing substance due process claims. They've said again and again, 1983 is not a font of tort law to convert state law claims into federal claims. Only the most egregious conduct qualifies and even intentional wrongs seldom evaluate the due process claim. That's what the court said. Relevant test, according to the courts, is whether it's conscious shocking in a series of cases somewhat similar setting. Let me just let me just cut you off and just tell you where I think I think the best claim that they have for a conscious shocking bodily integrity claim is. It's with, um, the girl who and I think it's DeMarcus who was forced to practice so hard that she developed a heart condition that required her to undergo surgery. Um, what is your best argument that that doesn't rise to the level of a substantive due process violation process violation based on 11th Circuit precedent? There have been several cases in the sports practice game setting where the coach pushed them so hard they ultimately died. And even in those cases, the court has said that's not enough to be conscious. Here's the one difference, I would say, between this case in those cases, and I'm not sure it's a difference that makes a difference, but it's a difference. Um, it's a difference that makes a difference. Yeah. Um, they say here that it was the team physicians told. Well, this is what they say. I'll just quote it because I don't want to add anything to it. They say, despite the concerns of team physicians, defendant Meeks Rydell coerced and forced plaintiff Marcus DeMarcus to do this stuff until she developed this condition. I don't see it in any of those other cases where there was a doctor who told the coach stop doing this, and the coach continued to do it anyway. It didn't. I've read the cases. I don't know whether it was there or not. It wasn't mentioned that we'll be with you on that, right? So it doesn't that make a difference that that in those cases it was a coach who was telling someone to practice, telling the practice, telling the practice. Unfortunately, they died here. It seems like what they're alleging is that there's a doctor who tells the coach stop making this girl practice and the coach says don't care. I'm going to continue to do it until she dies. That seems like it's a very serious problem. But except that didn't happen. And unfortunately, but she insisted, according to the complaint, the girl continued to play for some period of time after that. Um, again, you know, whether it's bad conduct as alleged, of course, we don't agree with any of it, but as alleged or not, under the law, as the court has developed it, it just doesn't mean that substance substantive. I mean, it's not the conscience level. I mean, again, the cases where in this court where football players died because the coach knew knowing that they were dehydrated wouldn't allow him to hydrate. I mean, what is the difference? I mean, you know, okay, whether it's wrong or not, right? It's not a constitutional violation. Gotcha. Okay. I think we've got your argument. Judge Jordan, do you have questions for Miss Collins? No, thank you. Okay, very well. Thank you. All right, Mr Patterson, you've got all five minutes of your rebuttal remaining. And just at some point during the five minutes doesn't matter to me when, but you really didn't have a chance to talk about substantive due process at all while you were at the podium because we had you sidetracked on Title nine the time. But would you mind in your presentation at some point addressing the substance of your process issue and especially the qualified immunity gloss and how it is that you can clearly demonstrate that the law is clearly established. Yes, Your Honor, I was already ahead of you planning on doing it. Um, yes. So I've got five minutes. I'm gonna speak very quickly first to address the points that you raised in earlier. The citations for notice to frisbee, um, is and I believe in the fact section paragraphs 20. I'm sorry. This is Yeah, this is frisbee. Um, first of all, this is not notice it specifically to meets right deal. But this does add to the volume of claims going to. There's it's plausible that the university had noticed that their volleyball players were going to be subjected to sexually checks, sexual harassment or inappropriate conduct. Um, in paragraph 28 of the complaint, it says that do the non appropriate conduct of coaches from the previous regime. Defendant frisbee promise members of the volleyball team that she would supervise the transition and coach coach makes right deals coaching regime to ensure that there would be no more inappropriate conduct. I also want to add, um, that coach assistant coach Chilco was also a member of that previous coaching regime. What this shows when read in totality of the is that the university knew that there were systemic fundamental flaws in their volleyball coaching program to the extent that they needed to promise their players to supervise the new coach. And then when you when you read into the other allegations of the complaint, this is just further evidence of the person knew that there was a problem here and that there was a substantial risk that their players would get subjected to sexual harassment. Um, there's also a mention in February 2019 from plaintiff Johnson in paragraph I believe it's around 1 36. Yeah, she's reports to frisbee. Um, or her mother complains to frisbee of the physical abuse that she endured as well. And the difference there is that because Johnson, just like the other plaintiffs, was also subjected to the same routine sexual harassment. Um, that that was part of that conversation as well. Um, I want to respond quickly that there's no allegation. Um, defense counsel said that there's no allegations that tipping complained. It doesn't matter if tipping made a complaint. That's not the question. What matters is that the university knew, regardless of whether it's because of a complaint from the person or because they observed it or they got anonymous tip. That's the question when they knew, um, not whether the plaintiff complains. That's very clear in the case law. Um, and and just like you said, it absolutely suggests misconduct. Um, I want to respond to the point that the allegation about the prior history is based on upon information and belief. That does not mean that the court has to discredit that allegation. That just means you can scratch through that language that says upon information and belief. Um, finally, to respond quickly to the point about, um, the amendments and that we had the opportunity to amend that the standard for amendment is that amendment should be granted or freely granted when justice requires. Unless it would be futile to amend the complaint, which it's not here. And then unless there was undue delay and prejudice discoveries not been had. And the case law says that where there's not been discovery where the defense haven't answered the complaint that there's no undue undue delay of prejudice to either party. So the question at the end of the day is whether the complaint has enough heft. I believe that that was the court's words and probably to, um, to make those to make it clear that the plaintiffs have stated a plausible claim to relief. And I think that's the case in ours. Um, and then briefly to respond to the substance due process claims. Um, I think what's I think what separates our case from all the other cases that have been cited by the lower court and decided by are decided by the appellants here is that this is more and hurt her conduct. And I'll focus because we've talked a lot about sexual harassment. I'll focus, especially on the excessive corporal punishment claim. And just just in the minute you've got left to be clear, you said, like, what makes this case different from all the others that have been cited by the other side? Given the Q. I gloss here, I think you've got to go on offense. Like, you can't just play defense against their cases, right? You've got to show I've got, you know, sort of a zinger of a case or line of cases that demonstrate the rightness of my position. So like to channel my inner linear Anderson, our colleague on the court, I won't try to do his beautiful southern accent. But like, what's your best case? Sure. All right. Thank you. Um, the best case is that it's this is way more than just an intention for the test for whether this is. I mean, we've established the right. We've identified, right? It's the right to bodily integrity to be free from excessive punishment. That's a given whether that's clearly established. We've got cases in the circuit that established that when a school has notice of the need, excuse me, that when there's no when there's no, um, legitimate purpose for using the punishment used that that use of corporal punishment is excessive. And that's exactly what is the case here. Because there is no reason for, like Judge Bratcher said, there's no reason to withhold medical treatment from a player who you see wheezing and who the trained physicians on the team know that there's a problem. And the plaintiff Marcus was not the only plaintiff that does that. I believe it was plaintiff. Gosh, I can't remember off the top of my head. But there's there's others in there that medical trainers. They were there having severe problems. They were having asthma attacks of denied inhalers. They had to call off the floor. Another plaintiff was hospitalized for two weeks in this instance. So is your point from a qualified immunity perspective? I'm not writing a single case like there is no case on point. You're gonna put yourself not in Bucket one of the three buckets, but maybe in Bucket two and say there's a clearly established principle that I can deduce from a case like Neil, where the guy the kid gets his eye knocked out of its socket. And you're saying the principle deduced from Neil is where there is no legitimate need for the use of force. Or, uh, that is just sort of, like, per se, conscience shocking. Sure. Okay. All right. So I think that's good. We've taken you over your time as well. Thank you very much for your presentation. Both sides. That case is submitted. Oh, wait, wait, wait. I'm so sorry. Judge Jordan, you for the questions from Mr Patterson. Oh, no. Thank you very much. Sorry about that.